FILED BY _____ D.C

97 APR -4 AM 11: 03

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA.-MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

WEDGEWOOD FINANCIAL GROUP, INC.,
COLORADO PAGING GROUP PARTNERS,
JPI SITE MANAGEMENT, INC.,
PAUL IWANKOWSKI and WILLIAM SCRAK,

    Defendants,

and

STONEPINE HOLDINGS, LTD., ROBERT
FABREGAS, PRIME TEL PAGING GROUP
PARTNERS, RANDY GILBERT, DARRELL
BAUGUESS and JOANNA IWANKOWSKI,

    Relief
    Defendants.

CASE NO. **97-6350**

**CIV-RYSKAM**

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF

MAGISTRATE JUDGE
VITUNAC

For its Complaint, Plaintiff Securities and Exchange Commission ("SEC" or "Commission") alleges:

1. Immediate emergency action is needed to prevent Defendants from continuing to violate the federal securities laws in connection with their ongoing, fraudulent sale of general partnership units in Colorado Paging Group Partners ("Colorado Paging"). Colorado Paging is the third in a series of fraudulent offerings, marketed by Defendants through South Florida boiler-rooms, in which unsophisticated investors are lured into investing in bogus paging partnerships based on an elaborate mosaic of lies.

2. Investors are told that the paging industry is poised for explosive growth, promised extravagant returns, assured that substantial additional financing is already in place, and promised that the paging business will be run by an experienced team which has already been retained. None of this is true. Rather, the principals behind the scheme are recidivist securities law violators, none of the prior partnerships is operational -- much less successful -- and substantial investor sums have been and continue to be stolen by Defendants. Unless they are immediately restrained, Defendants will continue their pattern of defrauding the public.

## DEFENDANTS

3. **Defendant Wedgewood Financial Group, Inc. ("Wedgewood")** is a Florida corporation incorporated in November 1995, with principal offices located at 2929 East Commercial Boulevard, Suite 506, Ft. Lauderdale, Florida. Wedgewood is a "boiler-room" which has marketed the securities to the general public as described herein.

4. **Defendant Colorado Paging Group Partners ("Colorado Paging")** has been a Colorado general partnership since October 1996 and is the issuer of the most recent partnership offering.

5. **Defendant JPI Site Management, Inc. ("JPI")** is a Florida corporation incorporated in January 1996, with principal offices located at 2213 East Atlantic Boulevard, Pompano Beach, Florida. JPI is the corporate entity through which the fraudulent partnership offerings were formed and organized. JPI is controlled by

Defendant Paul Iwankowski and his wife Relief Defendant Joanna Iwankowski.

6. **Defendant Paul Iwankowski ("Iwankowski")** resides in Ft. Lauderdale, Florida. Iwankowski, through JPI, formed and organized all three fraudulent partnership offerings. Iwankowski is subject to a 1995 permanent injunction against future violations of the anti-fraud provisions of the federal securities laws arising out of his participation in a scheme involving the sale of general partnership units through a boiler-room. Iwankowski is also the subject of several state cease-and-desist orders arising out of yet another fraudulent scheme involving Defendant Scrak and the sale of general partnership units.

7. **Defendant William Scrak ("Scrak")** is the president of Wedgewood. Scrak resides in Hollywood, Florida, and has been sued by state securities agencies for fraud arising out of his prior fraudulent scheme with Iwankowski.

**RELIEF DEFENDANTS**

8. **Relief Defendant Stonepine Holdings, Ltd. ("Stonepine")** is a California corporation incorporated in 1988, which operates out of a mail "drop box" in Beverly Hills, California. Stonepine maintains a bank account into which approximately $19,000 in investor funds have been deposited.

9. **Relief Defendant Robert Fabregas ("Fabregas")**, age unknown, is the President of Stonepine. Fabregas is also a stock broker subject to a permanent injunction and federal misdemeanor conviction for his violations of the anti-fraud provisions of the federal securities laws.

10. **Relief Defendant Prime Tel Paging Group Partners ("Prime Tel")** is a Georgia general partnership. Prime Tel maintains a bank § account into which approximately $190,000 in investor funds have been deposited.

11. **Relief Defendant Randy Gilbert ("Gilbert")** was one of the founding partners in the first two partnership offerings. Gilbert resides in the state of Georgia and maintains a bank account into which at least $48,500 in investor funds have been deposited.

12. **Relief Defendant Darrell Bauguess ("Bauguess")** is an engineer who has been involved in all three partnership offerings. Bauguess resides in the state of Maryland and maintains a bank account into which approximately $74,000 in investor funds have been deposited.

13. **Relief Defendant Joanna Iwankowski ("Ms. Iwankowski")** is Iwankowski's wife and the president of JPI. Ms. Iwankowski resides in Ft. Lauderdale, Florida and maintains a bank account into which approximately $74,000 in investor funds have been deposited.

## JURISDICTION

14. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d) and 77v(a), and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d), 78u(e) and 78aa.

## THE FRAUDULENT SCHEME

### Wedgewood's "Boiler-Room" Operation

15. Beginning in February 1996, Wedgewood and its now-defunct predecessor, Precision Development Group, Inc. ("Precision"), have

- 4 -

marketed to the public three fraudulent securities offerings in which investors are sold units in purported general partnerships that will allegedly build-out paging systems and form and run paging companies. The three offerings are Premier Paging Group Partners ("Premier Paging"), Prime Tel and the current offering, Colorado Paging.

16. Collectively, these securities offerings total $1.3 million, of which Wedgewood/Precision has raised approximately $800,000 from approximately 85 investors nationwide, including approximately $225,000 in connection with the Colorado Paging offering.

17. Wedgewood has never been registered with the Commission as a broker-dealer.

18. Using classic boiler-room sales techniques, Wedgewood sales agents "cold-call" prospective investors throughout the country using commercially purchased lead cards and lists of investors from prior offerings. The sales agents promise large returns (of up to five times the initial investment) with little risk using high pressure techniques which are designed to create a sense of urgency in the investor.

19. Many if not all of the investors and offerees are unsophisticated, have little or no knowledge about the paging industry and live thousands of miles from the site of the partnership business. Some of these investors are also retired and/or elderly persons who are told that the investment has been approved for Individual Retirement Accounts.

20. Wedgewood is and has been the exclusive marketing agent for Colorado Paging.

21. Scrak runs Wedgewood's daily operations and is a signatory on Wedgewood's bank account.

### The Colorado Paging Offering

22. Colorado Paging is a partnership formed for the ostensible purpose of building-out a paging system in Denver, Colorado and forming and running a paging company. Colorado Paging claims that capital raised from investors through the sale of partnership units will be used to fund the venture, including purchasing paging equipment.

23. Since late September 1996, Colorado Paging, through Wedgewood, has been offering to the public 40 partnership units at a cost of $12,500 per unit, for a total offering of $500,000.

24. Investors in the Colorado Paging offering are led to believe that they will have a completely passive role in the management of the venture. Investors are told that the engineer and one of the founding partners will run and manage the partnership business.

25. Most, if not all, of the investors in the offering are inexperienced and unknowledgeable in the business affairs of the partnership. Investors rely on the expertise and experience of the promoters.

26. More than $225,000 has already been raised from sales of units in the Colorado Paging offering to approximately 25 investors, and the offering is ongoing.

27. The Colorado Paging partnership units are securities as defined by Section 2(1) of the Securities Act, 15 U.S.C. § 77b(1), and Section 3(a)(10) of the Exchange Act, 15 U.S.C. § 78c(10).

### Material Misrepresentations and Omissions in Connection with the Colorado Paging Offering

28. Defendants systematically misrepresent and omit material facts relating to the Colorado Paging offering. Colorado Paging's offering materials are replete with material misrepresentations and omissions, and Wedgewood's sales agents, under Scrak's direction, routinely make material misrepresentations and omissions to prospective investors during telephone solicitations, including the following:

### Misappropriation of Investor Funds

29. The offering materials indicate that 53% of investor funds will be used to pay for engineering studies, construction of the paging system and equipment expenses. Wedgewood agents tell offerees that approximately $200,000 worth of equipment has already been purchased.

30. In a tape-recorded conversation, Bauguess told an investor that all of the equipment for Colorado Paging had been purchased from Glenayre Electronics ("Glenayre").

31. Glenayre has no record of any such purchase.

32. The offering materials also state that $6,000, at most, may be used to pay for "accounting and administrative expenses."

33. JPI has received over $31,000 in "management fees" from Colorado Paging.

34. The offering materials do not disclose or authorize the payment of these funds.

35. Instead of purchasing equipment and paying for engineering studies, Iwankowski, through JPI, is diverting investor funds for his personal use.

36. To date, approximately $86,000 of investor funds (including the "management fees") have been transferred to JPI's bank account from Colorado Paging.

37. JPI also received nearly $150,000 in connection with the Premier Paging offering and nearly $70,000 in connection with the Prime Tel offering.

### Fictitious Financing

38. Wedgewood's sales agents tell investors that Stonepine has agreed to loan $1.75 million to the partnership and that it is a major investment bank that has been involved in large corporate takeovers.

39. Wedgewood also touts Stonepine's president, Relief Defendant Fabregas, and claims Stonepine has pledged to finance $3 **billion** in investments in the wireless communications field in the next year alone.

40. Sales agents tell investors that as a result of Stonepine's financing the partnership will have sufficient capital to operate, thereby precluding any need for further capital from the investor/partners.

41. Stonepine has not agreed to finance the partnership, and has only committed to act as a finder of financing.

42. Stonepine is not a major investment banking firm; it is a shell corporation operating out of a mail "drop box" in Beverly Hills, California.

43. Defendants also fail to disclose that Fabregas is a stock broker subject to a permanent injunction and a federal misdemeanor conviction for his violations of the anti-fraud provisions of the federal securities laws.

### Purported Professionals

44. The offering materials tout the experience and knowledge of Relief Defendant Susan Weiner -- one of the two "founding" partners -- in the telecommunications industry. Wedgewood's sales agents refer to Weiner as the "managing partner" of the partnership.

45. Ms. Weiner is Iwankowski's secretary.

46. Ms. Weiner's only experience in telecommunications is her involvement in Defendant Iwankowski's prior fraudulent offerings, and her employment as a sales agent at Tri-Star Communications, the boiler-room that was at the center of the prior SEC enforcement action leading to Iwankoswki's permanent injunction.

47. The offering materials, as well as the sales agents, also tout Relief Defendant Bauguess's expertise and knowledge. Bauguess, an electronics engineer, purportedly has years of experience in the paging and telecommunications field.

48. The offering materials indicate that Bauguess has been "contracted by Colorado Paging" and sales agents tell investors that Bauguess will be compensated for his efforts by receiving one partnership unit.

49. Bauguess has not been retained by the partnership, but must be paid by investors for his services, as was the case in connection with the Premier Paging partnership, i.e., investors

were told Bauguess had already been paid and retained when in fact he had not.

### Misleading Financial Information

50. The offering materials contain financial data, projections, graphs and charts which bolster Colorado Paging's claims that an investment in the paging industry will produce a significant, multi-fold return.

51. For example, Colorado Paging cites data from Lehman Brothers, Inc., dated as of June 1995, that reflects healthy cash flows, robust subscriber growth and the market value of several publicly-traded paging companies. Also included is data illustrating the buy-out value of a paging company based upon the "value per pager" method.

52. Wedgewood's sales agents use this financial data in their oral representations to investors and tell investors that it is likely the Colorado Paging business will be purchased by a larger paging company at a tremendous profit.

53. The financial information provided in the offering materials and by the sales agents to investors is inaccurate and misleading.

54. The data paints a bullish picture of the paging industry when, in fact, most of the publicly-traded paging companies have suffered substantial market losses in the past year and the industry's fundamentals have dramatically eroded.

55. The sales agents' representations to investors that the partnership business is likely to be purchased for a large profit

to investors is without a reasonable basis in fact given current market conditions.

### Prior Partnership Successes

56. Wedgewood's sales agents tell investors that the two previous partnership businesses, Premier Paging and Prime Tel, are operational.

57. Premier Paging has no financing and is not operational.

58. The Prime Tel partnership has not scheduled or convened its first partnership meeting and investors have received no information on the status of the investment since the offering ceased in September 1996.

### Material Misrepresentations and Omissions in Connection with the Two Prior Offerings

59. Beginning in February 1996, Defendants, through Precision and then Wedgewood, marketed the Premier Paging and Prime Tel general partnerships, raising approximately $570,00 from investors. These two offerings were identical in all material respects to the current Colorado Paging offering:

  (a) largely unsophisticated investors were cold-called and induced to purchase units in general partnerships, but were told that they could have an entirely passive role;

  (b) investors were led to believe that the partnership business would be run by a team of experts who had already been retained by the partnership;

  (c) investors were told that the partnership had secured funding from Stonepine;

    (d)    investors were informed that the partnership business was very close to "up and running," and all that was needed was investor capital; and

    (e)    investors were promised extraordinary returns on their investment, approximately $60,000 a year in annual income (five times the initial investment), and told that it was likely that the partnership business would be bought out by a larger paging company for a tremendous profit.

60.    After the Premier Paging offering closed, a partnership meeting was held on June 8, 1996, in Greensboro, North Carolina. Defendant Iwankowski and Relief Defendants Bauguess and Gilbert, among others, attended.

61.    During that meeting, investors learned for the first time that:

    (a)    Bauguess had not been retained to run the partnership business, but would have to be hired by the partnership for an annual salary of $120,000;

    (b)    the founding partner (Relief Defendant Gilbert) who was to manage the day-to-day affairs of the partnership had resigned;

    (c)    StonePine had never agreed to fund the partnership;

    (d)    after commissions and other expenses the partnership was left with only $50,000 out of the approximately $420,000 raised from investors;

(e) due to the partnership's insufficient capitalization, investors might be required to invest additional money; and

(f) the partnership business was not "up an running" or even close to it.

62. To date, Premier Paging has not obtained financing, is without sufficient funds to operate and is not engaged in any business.

63. The second offering, Prime Tel, ceased in September 1996.

64. Since then, investors have received no information concerning the status of their investment and no partnership meeting has been held or scheduled.

65. The partnership's bank records reflect that only approximately 39% of the offering was sold out.

66. Bank records reflect that JPI has received more than $200,000 from these two partnerships.

## COUNT I -- AS TO ALL DEFENDANTS

### FRAUD IN VIOLATION OF
### SECTION 17(a)(1) OF THE SECURITIES ACT

67. Paragraphs 1 through 66 are hereby realleged and incorporated as if fully restated by reference.

68. Defendants, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, in the offer or sale of securities, as described herein, have been and are, knowingly, willfully and/or recklessly, employing devices, schemes or artifices to defraud.

69. By reason of the foregoing, Defendants Wedgewood, Colorado Paging, JPI, Iwankowski and Scrak, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

### COUNT II -- AGAINST ALL DEFENDANTS
### FRAUD IN VIOLATION OF
### SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5

70. Paragraphs 1 through 69 are hereby realleged and incorporated as if fully restated by reference.

71. Defendants, directly and indirectly, by use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of the securities, as described herein, have been and are, knowingly, willfully or recklessly: (i) employing devices, schemes or artifices to defraud; (ii) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (iii) engaging in acts, practices and courses of business which have operated, are now operating and will operate as a fraud upon the purchasers of such securities.

72. By reason of the foregoing, Defendants Wedgewood, Colorado Paging, JPI, Iwankowski and Scrak, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, thereunder.

### COUNT III -- AGAINST ALL DEFENDANTS

### FRAUD IN VIOLATION OF
### SECTIONS 17(a)(2) AND 17(a)(3) OF THE SECURITIES ACT

73.  Paragraphs 1 through 72 are hereby realleged and incorporated as if fully restated by reference.

74.  Defendants, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails, in the offer or sale of securities, as described herein, have been and are: (i) obtaining money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and (ii) engaging in transactions, practices and courses of business which are now operating and will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

75.  By reason of the foregoing, Defendants Wedgewood, Colorado Paging, JPI, Iwankowski and Scrak, directly and indirectly, have violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77(q)(a)(2) and 77(q)(a)(3).

### COUNT IV -- AGAINST DEFENDANT WEDGEWOOD ONLY

### UNREGISTERED BROKER-DEALER IN VIOLATION OF
### SECTION 15(a)(1) OF THE EXCHANGE ACT

76.  Paragraphs 1 through 75 are hereby realleged and incorporated as if fully restated by reference.

77.  Defendant Wedgewood, directly and indirectly, by use of the mails or any means or instrumentality of interstate commerce,

while acting as a broker or dealer engaged in the business of effecting transactions in securities for the accounts of others, effected transactions in securities, or induced or attempted to induce the purchase or sale of securities, without registering as a broker-dealer in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b).

78. By reason of the foregoing, Defendant Wedgewood, directly and indirectly, has violated and, unless enjoined, will continue to violate Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1).

### RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

#### I.

#### Declaratory Relief

Declare, determine and find that Defendants Wedgewood, Colorado Paging, JPI, Iwankowski and Scrak committed the violations of the federal securities laws alleged herein.

#### II.

#### Temporary Restraining Order, Preliminary and Permanent Injunctive Relief

Issue a Temporary Restraining Order, a Preliminary Injunction and a Permanent Injunction, restraining and enjoining:

(a) Defendants Wedgewood, Colorado Paging, JPI, Iwankowski and Scrak, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating: (i) Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a); (ii) Section 10(b) of the

Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, thereunder; and (iii) Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77(q)(a)(2) and 77(q)(a)(3); and

(b) Defendant Wedgewood, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, and each of them, from violating Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1).

### III.

### Disgorgement

Issue an Order requiring Defendants Wedgewood, Colorado Paging, JPI, Iwankowski and Scrak, and Relief Defendants Stonepine, Fabregas, Prime Tel, Gilbert, Bauguess and Ms. Iwankowski, to disgorge all ill-gotten profits or proceeds that they have received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest.

### IV.

### Penalties

Issue an Order directing Defendants Iwankowski and Scrak to pay civil fines and/or penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78(d)(3).

### V.

### Asset Freeze and Accounting

Issue an Order temporarily freezing the assets of Defendants Wedgewood, Colorado Paging, JPI, Iwankowski and Scrak, and Relief Defendants Stonepine, Fabregas, Prime Tel, Gilbert, Bauguess and Ms. Iwan, until further Order of the Court, and requiring

accountings by Wedgewood, Colorado Paging, JPI, Iwankowski, Scrak, Stonepine, Prime Tel, Gilbert, Bauguess and Ms. Iwankowski.

## VI.

### Appointment of Receiver

Issue an order appointing a Receiver of the assets of Wedgewood, Colorado Paging, and JPI to marshall and safeguard all of said assets, and any other duties the Court deems appropriate, and to prepare a report to the Court and the Commission detailing the activities of Wedgewood, Colorado Paging, and JPI and the whereabouts of investor funds.

## VII.

### Records Preservation and Expedited Discovery

Issue an Order requiring Defendants Wedgewood, Colorado Paging, JPI, Iwankowski and Scrak, and Relief Defendants Stonepine, Fabregas, Prime Tel, Gilbert, Bauguess and Ms. Iwankowski, to preserve any records related to the subject matter of this lawsuit that are in their custody, possession or subject to their control, and to respond to discovery on an expedited basis.

## VIII.

### Further Relief

Grant such other and further relief as may be necessary and appropriate.

## IX.

### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and

carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

        Respectfully submitted,

        CHARLES V. SENATORE
        Regional Director

By: _____
        Christian R. Bartholomew
        Senior Trial Counsel
        S.D. Fla. Bar No. A-5500258

        Chedly C. Dumornay
        Chief, Branch of Enforcement #3
        Florida Bar No. 957666

        David R. Chase
        Senior Counsel
        Florida Bar No. 967970

Dated: April 4, 1997        Attorneys for Plaintiff
        **SECURITIES AND EXCHANGE COMMISSION**
        1401 Brickell Avenue, Suite 200
        Miami, Florida  33131
        Telephone: (305) 982-6344
        Facsimile: (305) 536-7465

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I (a) PLAINTIFFS**

Securities and Exchange Commission

**DEFENDANTS** Wedgewood Financial Group, Inc., Colorado Paging Group Partners, JPI Site Management, Inc., Paul Iwankowski and William Scrak, Defendants. Stonepine Holdings, Ltd., Robert Fabergas, Prime Tel Paging Group Partners, Dana Gilbert, Darrell Bauguess, and Joanna Iwankowski Relief Defendants.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** _____
(EXCEPT IN U.S. PLAINTIFF CASES)

A Broward 97 cv 6350 KLR AEV

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** BROWARD COUNTY
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Christian R. Bartholomew (305) 982-6344
David R. Chase (305) 982-6363, SEC, 1401
Brickell Ave., Suite 200, Miami, FL 33131

**ATTORNEYS (IF KNOWN)**

97-6350 CIV-RYSKAMP

**(d) CIRCLE COUNTY WHERE ACTION AROSE:**
DADE, MONROE, (BROWARD), PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN × IN ONE BOX ONLY)

- ☒ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Cases Only) (PLACE AN × IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

MAGISTRATE JUDGE VITUNAC

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)
15 U.S.C. § 77q(a)(1), 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, 15 U.S.C. §§ 77q(a)(2) and 77q(a)(3), 15 U.S.C. § 78o(a)(1). Violations of the antifraud and broker-dealer provisions of the federal securities laws.

IVa. 5 days estimated (for both sides) to try entire case.

**V. NATURE OF SUIT** (PLACE AN × IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury—Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury—Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | B ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other | LABOR | ☒ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / B ☐ 371 Truth in Lending | | SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 385 Property Damage Product Liability | B☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting / PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| B ☐ 220 Foreclosure | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / Habeas Corpus: | B☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | / ☐ 540 Mandamus & Other / ☐ 550 Civil Rights | | | *A or B |

**VI. ORIGIN** (PLACE AN × IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Refiled
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23
**DEMAND $** TRO, Prel. & Perm. Inj. Disgorgement, Penalties, Asset Freeze, Receiver
Check YES only if demanded in complaint:
**JURY DEMAND:** ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE _____ DOCKET NUMBER _____

**DATE** April 4, 1997

**SIGNATURE OF ATTORNEY OF RECORD** Christian R. Bartholomew [signature]

FOR OFFICE USE ONLY: Receipt No. _____ Amount: _____
Date Paid: _____ M/ifp: _____

UNITED STATES DISTRICT COURT
S/F I-2
REV. 6/90